**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WADE RYAN REEVES,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,**<br><br>Defendants, | No. 25-cv-4371 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Wade Ryan Reeves, proceeding *pro se*, sues the Department of Health and Human Services ("DHHS") and Secretary Robert F. Kennedy, Jr., alleging that DHHS violated the Administrative Procedure Act ("APA") by failing to oversee certain state child support enforcement actions taken against him. *See* Am. Compl. ¶ 1, ECF No. 12. Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No 13. For the reasons below, the court will GRANT Defendants' Motion.

## I. BACKGROUND

On August 14, 2018, Plaintiff entered into a negotiated marital settlement agreement with his ex-wife in Stanislaus County Superior Court in California. Am. Compl. ¶ 16; Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 2, ECF No. 15. Several years later, in 2021, Plaintiff's ex-wife filed a request with the court seeking a modification of Plaintiff's child support obligation. Am. Compl. ¶ 24. After Plaintiff's ex-wife filed her request, the California Department of Child

Support Services (the "California Department") filed a Notice Regarding Payment of Support and Substitution of Payee and became involved in the modification proceedings. *Id.* ¶¶ 26, 28, 40; Pl.'s Opp'n at 2; Ex. C to Pl.'s Am. Compl., ECF No. 12-3. According to Plaintiff, no "enforceable" child support order existed at that time. Am. Compl. ¶ 29. Nonetheless, the California Department "threatened use" of interstate child support enforcement mechanisms during these proceedings, including enforcement in Oklahoma—Plaintiff's state of residence—if Plaintiff did not agree to the proposed modifications. *Id.* ¶¶ 28–30, 12.

In May 2022, a California court issued an order increasing Plaintiff's child support obligation pursuant to the parties' stipulation (the "Stipulation Order"). Pl.'s Opp'n at 3; *In re Marriage of Alisha*, No. F087058, 2025 WL 1765914, at *2–4 (Cal. Ct. App. June 26, 2025), *as modified on denial of reh'g* (Cal. Ct. App. July 25, 2025), *cert. denied sub nom. Reeves v. Reeves*, No. 25-1056, 2026 WL 1377072 (U.S. May 18, 2026). The Stipulation Order also directed Plaintiff to pay approximately $30,000 in attorneys' fees. Pl.'s Opp'n at 3. After the Stipulation Order was entered, Plaintiff attempted to set it aside on several occasions, including through a request to modify the new child support obligation and a motion to strike the Notice of Delinquency filed by his ex-wife, all of which the California court rejected. *See In re Marriage of Alisha*, 2025 WL 1765914, at *4–5. Plaintiff appealed, and the California Court of Appeals similarly rejected his challenges. *Id.* at *14.

The Stipulation Order was also registered in Oklahoma, "where three contempt citations were filed" against Plaintiff.[1] Pl.'s Opp'n at 6. Finding no recourse in California, Plaintiff challenged the orders confirming registration in Oklahoma state court, *see Reeves v. Reeves*, No.

[1] Plaintiff states that the allegations contained in those citations "were later incorporated into a March 3, 2026 default judgment imposing incarceration and a substantial purge amount of $300,000 under Title IV-D mechanisms." Pl.'s Opp'n at 6.

120954 (Okla. Civ. App. filed Dec. 30, 2022); *Reeves v. Reeves*, No. 122332 (Okla. filed July 8, 2024), *cert. denied*, No. 25-1180, 2026 WL 1718020 (U.S. June 15, 2026), and initiated several independent actions in the Northern District of Oklahoma, again attacking the validity of the Stipulation Order, *see, e.g.*, *Reeves v. Stanislaus Cnty. Super. Ct.*, No. 24-cv-0027, 2024 WL 1832994 (N.D. Okla. Apr. 4, 2024); *Reeves v. Seibert*, No. 24-cv-0431, 2025 WL 83357 (N.D. Okla. Jan. 13, 2025); *Reeves v. Gregorio*, No. 26-cv-0044, 2026 WL 622725 (N.D. Okla. Mar. 5, 2026). Simultaneously, Plaintiff sent several written requests via fax to DHHS, Am. Compl. ¶¶ 41–45, which is tasked with overseeing state child support enforcement programs funded through Title IV-D of the Social Security Act,[2] *see* 42 U.S.C. § 652(a). In these communications, Plaintiff alleged "ongoing misconduct" in the form of "Multi-State Fraud and Title IV-D Program Abuse" by Plaintiff's ex-wife's attorney, Ex B to Pl.'s Am. Compl., ECF No. 12-2, and asked for a determination of whether California and Oklahoma's child support enforcement actions were lawfully initiated against him, Am. Compl. ¶¶ 41–45. He received no response. *Id.* ¶ 45.

After these attempts also failed, Plaintiff filed this action on December 15, 2025. *See* Compl., ECF No. 1. In response to Defendants' first Motion to Dismiss, ECF No. 13, Plaintiff amended his Complaint, removing all counts except for his APA claim. *See* Am. Compl. ¶¶ 47–54. Though the precise contours of his claim are difficult to discern, Plaintiff appears to assert that DHHS violated the APA by failing to oversee or otherwise investigate the purportedly invalid state child support enforcement actions taken against him after he asked DHHS to do so. *See id.* ¶¶ 48–54; *see also id.* ¶¶ 28–31, 36–40, 41–45. He seeks "a declaration clarifying whether the referenced

---

[2] Specifically, Title IV-D of the Social Security Act provides for conditional federal funding to states based on their satisfactory provision of enumerated welfare services, including the establishment and administration of child support enforcement programs, pursuant to federally approved state plans. *See* 42 U.S.C. §§ 651 *et seq*.

Title IV-D cases were lawfully initiated under federal law," *id.* ¶ 55, and "an order requiring HHS to determine whether the services allegedly provided in connection with the referenced IV-D cases fall within the authorized scope of Title IV-D enforcement," *id.* ¶ 57.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004), and the law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the plaintiff establishes otherwise, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F. 3d 1137, 1139 (D.C. Cir. 2011) (cleaned up). "Nevertheless, 'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The pleadings of pro se parties are to be 'liberally construed,' and a pro se complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *James v. United States*, 48 F. Supp. 3d 58, 63 (D.D.C. 2014) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). "This benefit is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d

135, 137 (D.D.C. 2009) (citing *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987)). "[E]ven a pro se plaintiff must meet his burdens of proving subject matter jurisdiction and stating a claim for relief." *James*, 48 F. Supp. 3d at 63.

## III. ANALYSIS

Defendants assert that dismissal is warranted because Plaintiff has failed to identify any discrete, mandatory duty that DHHS failed to perform. *See* Defs.' Mot. at 6–8, 9–10. The court agrees.

To state a claim for unlawfully withheld agency action under § 706(1) of the APA, a plaintiff must show that the defendant failed to perform a "legally required, discrete act." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009). "The limitation to discrete agency action precludes . . . broad programmatic attack[s,]" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), while "[t]he limitation to required agency action rules out judicial direction of even discrete agency action that is not demanded by law," *id.* at 65 (cleaned up). Plaintiff's claim fails on both fronts. For one, the crux of his challenge is clearly directed at general federal oversight over state Title IV-D programs. *See* Am. Compl. ¶ 1 ("This action arises under the [APA] . . . and concerns federal oversight of the Title IV-D child support enforcement program administered by [DHHS]"); *id.* ¶¶ 46, 50 ("Congress did not leave Title IV-D oversight optional."); *id.* ¶ 48 ("Under 42 U.S.C. § 652, the Secretary of Health and Human Services must oversee state Title IV-D programs.").

Indeed, the only statutory provision Plaintiff cites in his Amended Complaint is 42 U.S.C. § 652, which he claims requires DHHS to review state plans for Title IV-D programs, their performance data and reports, and conduct audits "assessing whether federal funds are properly expended and accounted for." Am. Compl. ¶¶ 48–49. Notably missing from Plaintiff's pleading,

however, is an allegation that DHHS failed to perform any of these duties outright. Rather, Plaintiff's Amended Complaint asserts only a generalized grievance with DHHS' oversight of California and Oklahoma's child support enforcement programs. This is precisely the type of "broad programmatic attack" that the APA proscribes. *Norton*, 542 U.S. at 64; *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891–93 (1990) (explaining that an "entire [agency] program . . . cannot be laid before the courts for wholesale correction under the APA" and holding that plaintiff must instead "direct its attack against some particular 'agency action' that cause[d] it harm" (cleaned up)); *Montanans*, 568 F.3d at 227 (explaining that "conclusory statements" of how an agency "neglected its general statutory and regulatory obligations" are insufficient to "support judicial action under § 706(1).").

Presumably aware of this defect, Plaintiff invokes more specific statutory and regulatory provisions in his Opposition, but none provide the mandatory duty required to support his claim. First, Plaintiff relies on "the financial accountability framework Congress embedded in Section 652(a)(4)(C)(ii)(I)." Pl.'s Opp'n at 10. That provision requires DHHS to assess "whether Federal and other funds made available to carry out the State program are being appropriately expended, and are properly and fully accounted for" through audits conducted in accordance with standards set by the Comptroller General. 42 U.S.C. § 652(a)(4)(C). Contrary to Plaintiff's assertion, *see* Pl.'s Opp'n at 11, nothing in this provision directs DHHS to conduct individual audits of funds used in particular state enforcement actions, *cf. Blessing v. Freestone*, 520 U.S. 329, 348 (1997) (observing, under the prior auditing provision, that "[t]he Secretary can audit only for 'substantial compliance' on a programmatic basis"), *abrogated on other grounds by Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 376 (2025). Nor does Title IV-D's auditing provision demand the finding that Plaintiff seeks—a determination of "whether the Title IV-D cases referenced in

[his] complaint were lawfully initiated and whether the services allegedly provided fall within the authorized scope of Title IV-D enforcement." Am. Compl. ¶ 53.

Plaintiff also invokes 45 C.F.R. § 302.33, Pl.'s Opp'n at 10, which sets out certain requirements that state plans must fulfill to be approved for Title IV-D funding. *See id.* § 302.0 ("This part defines the State plan provisions required for an approved plan under title IV–D of the Act."). Like Title IV-D's auditing provision, however, nothing in this regulation requires DHHS to conduct an investigation into whether specific child support enforcement actions were "lawfully initiated" or whether the services invoked were appropriately "authorized." Am. Compl. ¶ 53. And to the extent Plaintiff seeks to collaterally attack the validity of the May 2022 Stipulation Order, *see* Pl.'s Opp'n at 11 (asserting that "[n]one of the three federal eligibility conditions were satisfied" to trigger the California Department's involvement in the modification proceedings); *id.* at 12 ("The integrity of the May 19, 2022 instrument through which these federal mechanisms were deployed is itself a federal program compliance concern."), or its registration in Oklahoma, *id.* at 11 ("The cross-state misuse [of Title IV-D enforcement mechanisms] continued in Oklahoma."), his challenge is barred by the *Rooker-Feldman* doctrine. *See Glass v. U.S. Dep't of Health & Hum. Servs.*, No. 17-cv-0428, 2017 WL 5479442, at *5 (D.D.C. Nov. 14, 2017) ("Insofar as plaintiff brings this lawsuit against DHHS as a means by which to alter, overturn, or enjoin enforcement of the Florida Court's child support orders, the *Rooker Feldman* doctrine applies.").

Finally, Plaintiff cites 5 U.S.C. § 555(b), Pl.'s Opp'n at 7–8, which requires each federal agency to "proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). According to Plaintiff, DHHS violated this duty by failing to respond to his faxes requesting the same determination he now seeks from this court. *See* Pl.'s Opp'n at 7–8. His argument is unavailing. As the D.C. Circuit has explained, this "ancillary provision" of the APA

"simply expresses a congressional view that agencies should act within reasonable time frames." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (cleaned up). As such, it cannot support compulsory relief where, as here, a plaintiff fails to identify any action "demanded by law." *Id.* at *5 (quoting *Norton*, 542 U.S. at 65).

In sum, Plaintiff fails to establish that DHHS unlawfully withheld any discrete, mandatory duty. Plaintiff's allegations "therefore do not support judicial action under" the APA. *Montanans*, 568 F.3d at 227.[3]

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss and DENY as moot Plaintiff's remaining pending motions. A separate Order will follow.

Date: August 31, 2026

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge

[3] Because the court finds that Plaintiff has failed to identify any discrete, mandatory duty that DHHS failed to perform to support his claim under 5 U.S.C. § 706(1), his Motion for Leave to File a Surreply, ECF No. 19, which merely contains additional exhibits reflecting "ongoing interstate enforcement consequences," *id.* at 1, is DENIED as moot.